**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.1:18-CV-2012

COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO,

    Plaintiff,

v.

CENTURA HEALTH/ST. MARY-CORWIN MEDICAL CENTER,

    Defendant.

## COMPLAINT TO COMPEL ARBITRATION

Plaintiff, Communications Workers of America ("the Union"), by its counsel, complains against Defendant Centura Health/St. Mary-Corwin Medical Center ("SMC"), as follows:

### INTRODUCTION

1. This is an action under the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185(a), and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§1 *et seq.*, to obtain specific performance of an arbitration provision in a collective bargaining agreement ("Agreement") between the Union and SMC. Defendant SMC unjustifiably refuses to arbitrate a grievance arising under the Agreement. This suit seeks to compel SMC to submit to arbitration.

### PARTIES

2. Plaintiff Union is a labor organization as defined in Section 2(5) of the LMRA, 29 U.S.C. §152(5). The Union maintains an office in Greenwood Village, Colorado. The Union

represents members located in this judicial district, including employees in SMC's bargaining unit at St. Mary-Corwin Medical Center in Pueblo, Colorado.

3. Defendant SMC, a non-profit corporation with offices in Pueblo, Colorado, operates a hospital which provides both inpatient and outpatient medical services and is an employer as defined in Section 2(3) of the LMRA, 29 U.S.C. §152(3). SMC's business operations affect interstate commerce within the meaning of Section 2(7) of the National Labor Relations Act, 29 U.S.C. Section 152(7).

## THE COLLECTIVE BARGAINING AGREEMENT

4. The Union and SMC are signatory to a collective bargaining agreement ("the Agreement") with an effective duration of October 1, 2017 through September 30, 2020. A true and correct copy of that Agreement is attached as **Exhibit A** to this Complaint. The Agreement is the relevant contract for the dispute herein.

5. Article 1.2 of the Agreement defines a regular full-time employee as one who is "hired to work at least 70 hours per pay period". Exhibit A at p. 1. In the same section, the Agreement defines a regular part-time employee as one who is "hired to work at least 40 hours per pay period". *Id*. At all relevant times, a pay period constituted a span of two (2) weeks.

6. Article 1.1 of the Agreement excludes "PRN positions/classifications" from the bargaining unit. *Id*. According to the Agreement, PRNs are defined as "non-benefited employees working on an as needed basis, not to be confused with those employees working in benefited positions out of the internal St. Mary Corwin Float Pool". *Id*.

7. Article 5.1 of the Agreement states that "PRN, temporary and special part-time positions will be laid off before any regular part-time or regular full-time employees". Exhibit A

at p. 5. Article 5.1 provides that "[f]or the purposes of layoffs (including temporary layoffs) and recalls within the bargaining unit, departmental seniority in the job title shall govern provided that the ability, competency, skill, efficiency, and the attendance record of the employees are substantially equal". *Id*.

8. Article 7 of the Agreement relates to the permissible hours of work, overtime and other terms and conditions of employment. Specifically, Article 7.1 specifies that "[t]he Employer may schedule employees to work four (4) ten (10) hour shifts or other alternative scheduling arrangements as mutually agreed by the Local Union and the Hospital". Exhibit A at p. 7.

9. Article 11 of the Agreement sets forth the kinds and amounts of benefits that will be provided to bargaining unit employees. With regards to severance benefits, Article 11 states that "Union employees will receive the same severance as other regular non-bargaining unit employees of the Hospital capping at twelve (12) weeks" and that "[s]evered employees will be required to sign a waiver and release form". Exhibit A at 14.

10. Articles 8, 9 and 10 of the Agreement, titled "Grievance Procedure", "Arbitration" and "Expedited Arbitration" respectively, provide for a grievance-arbitration process as the exclusive mechanism for resolving disputes arising out of the interpretation or application of the Agreement. Article 8 provides in relevant part:

**ARTICLE 8**

GRIEVANCE PROCEDURE

8.1 A grievance is defined as a dispute or controversy between the Employer and the Union.

8.2    The Hospital and Union encourages the resolution of conflict and to attempt to settle the dispute or controversy on an informal basis with the immediate supervisor. The Hospital and the Union will make all efforts to investigate the issue and attempt to resolve the dispute or controversy before a grievance is filed by the Union. The Employer and the Union shall utilize all their best efforts to attempt to resolve grievances at any stage of this Grievance Procedure.

8.3

Step 1  If the Union wishes to pursue the grievance, it will be taken by the appropriate Steward and/or Union Officer to the appropriate supervisor in writing within fifteen (15) business days of the event leading to the grievance. It is understood that the employee is responsible for notifying the Union if they wish to pursue a grievance. The written grievance form shall be fully completed. The immediate supervisor or the designated alternate will give an answer in writing within five (5) business days of receiving the written grievance.

Step 2  If the immediate Supervisor's written answer is not satisfactory to the Union then the written grievance shall be presented to the Manager or Director by the Steward and/or Union Officer in writing within five (5) business days from the immediate supervisor's answer in Step 1. The Manager or Director will discuss the grievance with the Steward or Union Officer and the immediate Supervisor (either together or separately), confer with Human Resources, and attempt to resolve the issue. The Manager or Director or his/her designated alternate will give a written answer within five (5) business days of receiving the written grievance. If the immediate Supervisor is the Manager or Director, skip Step 2 and proceed to Step 3.

Step 3  If the response provided by the Manager or Director in Step 2 does not resolve the issue or incident, then the written grievance shall be presented to the Director of Human Resources by the International Staff Representative of the Union within five (5) business days of the Manager or Director's signature/response in Step 2. The Director of Human Resources will discuss the grievance within fourteen (14) days with the Steward or Union Officer along with the International Staff Representative and the Manager or Director as well as the Vice President of the department (either together or separately), and attempt to resolve the issue. A written response from the Director of Human Resources will be provided to the International Staff Representative within five (5) business days of the receipt of the written grievance.

Step 4   If the response provided by the Director of Human Resources does not resolve the issue or incident, the Union will have ten (10) business days from the signature/response of the Director of Human Resources to submit the matter to Mediation and inform the Employer of the intent to proceed to this step. The Step to Mediation shall be by mutual agreement between the Employer and the Union. If both parties do not agree to mediation, the next step is arbitration per Article 9 or 10.

*   *   *

8.4     The Union, the employees and representatives will adhere to the following conduct when addressing and dealing with a Grievance. Violation of the conduct and rules outlined below could result in disciplinary action in accordance with the Organization's disciplinary policy and procedures.

8.4.1   The investigation of grievances shall be conducted only on the Steward's or Union Officer's non-working time, unless prior approval by the immediate supervisor is given after conferring with the Director of Human Resources (or designee).

8.4.2   The conduct of the investigating Steward or Union Officer shall be in alignment with established standards of behavior and should not impede, impact, or disrupt Hospital or departmental operations.

8.4.3   Employees or employed Stewards shall not leave their work area, use Hospital equipment or communication mediums, or work areas for the purpose of Union business unless responding to direct communications from the Employer about Union business.

8.4.4   The Steward or employed Union Officer shall not be prohibited from presenting written grievance documentation to the appropriate management level per the process defined in the Grievance process during work time.

8.4.5   Grievance meetings as per the established steps in the Grievance process shall be held at mutually agreeable times**.** At minimum, the meetings will include the Steward or Union Officer and the appropriate management representative(s).

8.4.6   If the mutually agreed upon meeting is held during the employed Steward or Union Officer's regularly scheduled work time, there will not be a loss of wages for the duration of the meeting.

8.4.7   For the purpose of resolving grievances, there shall be no more than one (1) authorized Union representative paid for the time spent in resolving or

administering the process. Further, the employee will not be paid for grievance meetings outside the employee's normal shift.

8.4.8   It is expected that both the Union and Employer will comply with all steps outlined in the Grievance process.

## ARTICLE 9

### ARBITRATION

9.1   A grievance eligible for arbitration under this article is defined as a dispute or controversy over the specific written terms of this Agreement. No other controversy or dispute will be eligible for arbitration. Only the Union or the Employer may file for arbitration based on the eligibility defined above.

9.2   In order to proceed to arbitration pursuant to this Article, the grievance shall have been properly processed through the Grievance Procedure Article 8 of this Agreement).

9.3   If the Employer raises the issue of whether a grievance is, in fact, eligible for arbitration, then such an issue shall be bifurcated and decided prior to proceeding on the merits of the grievance. In this, the arbitrator must specify in the decision, with reasonable detail, whether or not the grievance is eligible for arbitration.

9.4   If the Union elects to pursue an arbitration through this Article, outlined below are the steps that will be followed:

> The Union will provide a notice of intent to arbitrate a grievance to the Employer. Upon receipt of the intent to arbitrate, the Union and the Employer will work collaboratively to select an impartial arbitrator and will have no more than ten (10) business days to arrive at a mutually agreeable arbitrator. This timeframe can be extended by mutual agreement. If the parties are unable to agree upon an arbitrator, they shall jointly request from the Federal Mediation and Conciliation Service, JAMS or AAA Third Party Arbitration Service to furnish both parties the same list of seven (7) objective arbitrators from which to choose. Selection/elimination process to arrive at one arbitrator will be conducted as follows:

> The parties shall select the arbitrator using an alternating elimination method whereas one party will strike an arbitrator from the list followed by the other party striking a different arbitrator

    until the list is reduced to one (1). The first stroke will be determined by lot. The last name remaining on the list shall be the designated arbitrator.

9.5 It is understood and agreed that the decision of the arbitrator constituted as set forth above shall be binding and final. The arbitrator's jurisdiction to make an award shall be limited by the submission and confined to the interpretation or application of the provisions in this Agreement. The arbitrator will not have jurisdiction to make an award which has the effect of amending, altering, expanding, or ignoring any provision of this Agreement, nor have the jurisdiction to determine that the parties by practice or implication have amended or supplemented this Agreement. The arbitrator will have no authority to pass upon the Employer's exercise of any of the rights not abridged by this Agreement. If arbitration is conducted concerning a grievance involving disciplinary action, the arbitrator shall determine the question of fact as to the occurrence or non-occurrence of the circumstances on which the discipline was based. If it is determined that such circumstances were substantiated, the Employer's decision as to the level of discipline shall not be disturbed, unless arbitrary, capricious, or unjust.

9.6 The expenses of the arbitrator will be shared equally between the Employer and Union. Witness expense will be the responsibility of the party that provides said witness.

9.7 It is specifically agreed that grievances will not be combined for the purposes of submission to arbitration. Only one (1) grievance shall be heard in any given arbitration session unless mutually agreed upon by the Union and the Employer.

## ARTICLE 10

### EXPEDITED ARBITRATION

Grievances involving the discharge and layoff of an employee must be processed under this expedited procedure. Grievances involving discharges may not be brought under the procedures established in Articles 8 and 9. Grievances involving the denial of a promotion to a higher rated classification of an employee may be processed under this expedited procedure. A grievance which must be filed under this Article is forfeited if not timely filed and processed in accordance with the terms of this Article.

The Union must present the grievance to the designated Hospital Representative in writing within five (5) days (Saturday, Sunday and holidays excluded) of the time that the employee is informed of the discharge or the promotion denial.

> A meeting will be held concerning the grievance between the International Union Representative or designee and the designated Hospital Representative within five (5) days of submission of the grievance unless such time limits are extended by mutual agreement.
>
> If resolution cannot be reached in this meeting, the Union shall notify the Employer in writing within ten (10) days (Saturday, Sunday, and holidays excluded) of the meeting of the desire of the employee to proceed to expedited arbitration.
>
> Within five (5) days (Saturday, Sunday, and holidays excluded) of receipt of the Union's written notice, the Employer shall contact the Union concerning the selection of an arbitrator.
>
> In the event that the parties are unable to agree upon an arbitrator, the case shall be heard by an arbitrator from a list of arbitrators jointly prepared by the parties. Arbitrators shall be selected from the list on a rotation basis. If the arbitrator selected from the list is not available to hear the case within fourteen (14) calendar days of being selected, the next arbitrator on the list who is available to hear the case within fourteen (14) calendar days shall be selected.
>
> The arbitration hearing shall be held within fourteen (14) calendar days of the selection of the arbitrator. The arbitrator's award, which shall be non-precedential, shall be rendered in writing within five (5) days (excluding Saturday, Sunday, and holidays) of the close of the hearing. A written statement of position may be presented by either party at the commencement of the hearing.
>
> This expedited grievance and arbitration proceeding shall be governed by the provisions of Articles 9.2, 9.3, 9.5, 9.6 and 9.7.

Exhibit A at pp. 8-13.

## THE UNION'S GRIEVANCES

11. On or about March 7, 2018, SMC sent out a memo to the Union informing them that, starting on May 7, 2018, various bargaining unit employees would be permanently terminated as part of a mass layoff. A copy of the memo is attached as **Exhibit B**.

12. On March 29, 2018, the Union filed three (3) grievances (Nos. SMC 7774-2018-02, SMC 7774-2018-03 and SMC 7774-2018-04) arising from SMC's proposed layoffs. A copy

of the grievances are attached collectively as **Exhibit C**. Grievance No. SMC 7774-2018-02 contested SMC's failure to comply with the contractual requirements set forth in Articles 5, 7 and 11 before unilaterally announcing and commencing layoffs. Grievance No. SMC 7774-2018-03 objected to the Company's refusal to produce documents and information germane to collective bargaining. Grievance No. SMC 7774-2018-04 objected to the proposed layoffs on the Orthopedic Floor as violations Articles 5, 7, 11 and because the layoffs were prompted by the Union's lawful insistence to bargain over shift changes as set forth in Article 7.1.  A copy of the emails demonstrating SMC's refusal to comply with the CBA with regards to the Orthopedic Floor layoffs are attached as **Exhibit D**.

13. On or about April 3, 2018, SMC denied all three (3) grievances invoking management rights, objecting to the Union's information requests as inappropriately seeking "non-bargaining unit information", and claiming that the layoff determination was not arbitrable. A copy of SMC's Step One response is attached as **Exhibit E**.

14. On or about April 5, 2018, SMC denied the Union's grievances at Step Two.

15. On June 4, 2018, SMC denied the Union's grievances at Step Three.

16. On June 11, 2018, the Union requested mediation of the three (3) grievances pursuant to Article 8.3 of the Agreement.  The next day, SMC rejected the invitation the mediate. A copy of the emails regarding mediation are attached as **Exhibit F**.

17. On June 12, 2018, the Union informed SMC of its intention to arbitrate the grievances and indicated its intention to request a panel of arbitrators from the Federal Mediation and Conciliation Service.  The following day, SMC informed the Union that it did not agree that the grievances were arbitrable and advised the Union to "[p]lease feel free to proceed in any

manner you see fit". The Union responded by advising SMC that Article 9.3 requires the parties to arbitrate the issue of a grievance's arbitrability and that an arbitrator must be selected. Despite the clear language of the Agreement and SMC's obligation to arbitrate the question of arbitrability, SMC stated that "[w]e have provided our explanation in the grievance process […] [w]e do not think that these matters are subject to arbitration". A copy of these emails is attached as **Exhibit G**.

18. To date, SMC has failed to explain or justify its refusal to arbitrate the issue of arbitrability.

**CAUSE OF ACTION:**
**SPECIFIC PERFORMANCE OF ARBITRATION AGREEMENT**
**[29 U.S.C. § 185(a) and 9 U.S.C. §§ 1 *et seq*.]**

19. The allegations of paragraphs 1-18 are incorporated as if fully set forth herein.

20. Grievance Nos. SMC 7774-2018-02, SMC 7774-2018-03 and SMC 7774-2018-04 filed on March 29, 2018, referenced in paragraph 12 above, set forth disputes between the Union and SMC arising out of the interpretation or application of the Agreement.

21. Defendant SMC is obligated to arbitrate these disputes pursuant to Articles 9 and 10 of the Agreement.

22. Defendant SMC has refused and continues to refuse to arbitrate these disputes without justification.

23. The Union and the employees it represents are without an adequate remedy at law and are suffering irreparable injury because Defendant SMC is refusing to comply with its obligations under the Agreement.

24.     The Union is entitled to a summary order compelling arbitration under § 301(a) of the LMRA, 29 U.S.C. § 185(a) and the Federal Arbitration Act, 9 U.S.C. § 4.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Union prays that this Court:

    a. Enter a judgment and order compelling Defendant MHCD to submit to arbitration the Union's grievances filed March 29, 2018;

    b. Award the Union its costs and attorneys' fees where provided by law;

    c. Award to the Union any other relief the Court deems just and proper.

Respectfully Submitted by:

Dated:  August 8, 2018

    s/*William R. Reinken*
William R. Reinken, Esq.
Stanley M. Gosch, Esq.
Richard Rosenblatt, Esq.
Rosenblatt & Gosch, PLLC
8085 East Prentice Avenue
Greenwood Village, CO  80111-2745
P:  303-721-7399   F:  720-528-1220
wreinken@cwa-union.org

Plaintiff's Address:
Communications Workers of America
8085 East Prentice Avenue
Greenwood Village, CO  80111-2745